# STATE OF MICHIGAN
# COURT OF APPEALS

MARK CHABAN, P.C. and TINDALL & COMPANY, P.C.,

UNPUBLISHED
November 21, 2013

Plaintiffs-Appellants,

and

MIDWEST OIL SUPPLY, INC.,

Plaintiff,[1]

v

No. 308326
Macomb Circuit Court
LC No. 2010-005280-CZ

HARMINDER K. RATHORE a/k/a KITTY RATHORE, GURNOOR RATHORE, PRITAM RATHORE,[2] MALKIAT RATHORE a/k/a MALIAT RATHORE, MOHAN S. RATHORE,[3] KITTY RATHORE, BAKSHINDER BHATTI, INDERJIT S. BHATTI, MALIAT RAPHORD, JASVIR KAUR a/k/a JASVIR JAUR, ISHTADEV RATHORE a/k/a RAY RATHORE, and DOABA TRUCK STOP, INC.,

Defendants-Appellees.

Before: M. J. KELLY, P.J., and CAVANAGH and SHAPIRO, JJ.

PER CURIAM.

---

[1] On July 26, 2011, the trial court entered an order striking Midwest Oil Supply, Inc, as a party plaintiff because plaintiffs' counsel was never retained to represent Midwest Oil in this matter.

[2] On March 28, 2011, defendants Pritam, Bakshinder, and Inderjit were dismissed from this matter because they were not properly served. On May 2, 2011, the trial court entered a final order resolving all outstanding issues as to these three defendants.

[3] On January 10, 2011, Mohan S. Rathore was dismissed from this matter because he was deceased.

-1-

Plaintiffs, Mark Chaban, P.C. (Chaban PC) and Tindall & Company, P.C. (Tindall PC), appeal as of right from an order dismissing their fraud action filed against former clients and premised on confidential information plaintiffs' attorneys, Michael Tindall (Tindall) and Mark Chaban (Chaban), acquired during the course of their attorney-client relationships with those clients, which was then revealed and used in this proceeding. We affirm the dismissal and remand for determination of defendants' damages and expenses resulting from this vexatious appeal.

Defendant Ishtadev a/k/a Ray Rathore (Ray) is the sole shareholder and president of defendant DOABA Truck Stop, Inc., a fuel station in operation since about 1993. Ray also is an employee of Chrysler where he works as an engineer. In 2010, DOABA and Ray were involved in a lawsuit. They had been sued by a fuel supplier for breach of contract. DOABA and Ray had entered into a seven year contract with the supplier, but about five years later DOABA was forced to shut down because of an underground tank issue and the supplier sued for recovery of money owed on the final two years of the contract, approximately $650,000. Ray and DOABA were represented by attorney Mark Chaban of plaintiff Chaban PC with regard to that lawsuit. It does not appear that they entered into a retainer agreement with regard to this attorney-client relationship. On February 24, 2010, according to attorney Michael Tindall's (Tindall) billing records, Chaban called Tindall, the sole shareholder and president of plaintiff Tindall PC, regarding a "possible Bankruptcy filing" with regard to DOABA. It appears that, on that same date or the next day, Ray retained Tindall to file a chapter 11 bankruptcy petition for DOABA, as well as to assist with the state court proceeding. A retainer agreement was entered into with regard to this attorney-client relationship and Ray paid Tindall a retainer of $30,000, which came from his wife Kitty's bank account and Ray's 401(k) account, not a DOABA account.

During Tindall's legal representation of DOABA with regard to the filing of a bankruptcy petition, Ray provided Tindall with significant financial and other information concerning DOABA. On March 15, 2010, Tindall filed the bankruptcy petition, but did not file the supporting schedules. According to Tindall, he was unable to obtain the necessary information from Ray to complete those schedules. On April 9, 2010, however, another attorney representing DOABA negotiated a settlement with the fuel supplier and bankruptcy was no longer desired. The fuel supplier settled for about $405,000, which was to be paid in monthly installments of $25,000, following the first payment of $45,000. It appears from Tindall's billing records that Tindall was not aware that Ray was attempting to settle the lawsuit through the efforts of another attorney, and then Ray refused to discuss the final settlement terms with Tindall.

The next day, April 10, 2010, Tindall filed a motion to withdraw as counsel for Ray and DOABA in the bankruptcy proceedings. On April 13, 2010, DOABA's bankruptcy petition was voluntarily dismissed by the settlement attorney. According to Tindall's billing records, as of April 11, 2010, Ray owed Tindall $38,675 for his legal services and $30,000 already had been paid, which left an outstanding balance of $8,675. However, Tindall's billing record of April 14, 2010, included an additional charge of $18,750 for "supplemental services provided to client and 'settlement attorney' April 11, 12, 13, 2010, with respect to settlement with [the fuel supplier],

scheduled hearings, and dismissal."[4] And according to Chaban's affidavit, Ray and DOABA owed Chaban $32,097.25 for legal services rendered.

Apparently after the legal matters were resolved, a dispute regarding outstanding legal fees arose between Tindall, Chaban, and Ray. Tindall and Chaban claimed that they were owed additional fees for legal services rendered, which Ray denied. Tindall and Chaban did not, however, sue Ray or DOABA to collect their claimed fees and neither obtained a judgment in this regard. Instead, using the financial and other information that Tindall and Chaban acquired during the course of their attorney-client relationships with DOABA and Ray, the law firms of Tindall and Chaban brought this legal action premised on the Uniform Fraudulent Transfer Act (UFTA), MCL 566.31 *et seq.*, and claimed that the law firms were creditors of Ray and DOABA. And not only were plaintiffs Tindall PC and Chaban PC creditors of Ray and DOABA, but based on information Tindall and Chaban acquired during their legal representations, plaintiffs claimed throughout this lawsuit that Ray and DOABA had several other creditors that Tindall and Chaban represented in this action. That is, Tindall repeatedly advised the trial court that he not only represented the named plaintiffs' interests, but the interests of several creditors of DOABA and Ray—even though he was not retained by any other creditor to pursue such claims.

## Relevant Procedural History[5]

On December 14, 2010, Tindall filed a complaint on behalf of Tindall PC, Chaban PC, and Midwest Oil Supply, Inc. (Midwest Oil), averring that each of these parties were "creditors" of DOABA and Ray as defined by MCL 566.31(d) of the UFTA, MCL 566.31 *et seq.*[6] The complaint did not disclose the attorney-client relationships that existed between Tindall, Chaban, Ray, and DOABA, and did not reference the Michigan Rules of Professional Conduct (MRPC). Neither Ray nor DOABA were named defendants, although plaintiffs averred that they were "debtors" and DOABA was an "insider" as defined under the UFTA. The named defendants were Ray's wife, Harminder a/k/a Kitty (Kitty), who was alleged to be an "insider" and a transferor of various assets of DOABA. Several of Ray's relatives were also named as defendants, including his daughter (Gurnoor), mother (Pritam), father (Mohan), brother (Malkiat), sister (Bakshinder), brother-in-law (Inderjit), and sister-in-law (Jasvir). They were alleged to be transferees of various assets of DOABA. Plaintiffs averred that DOABA assets were being transferred to the transferees in an effort to conceal them and defraud creditors.

In count I, plaintiffs alleged a claim of "fraudulent conveyances to defraud creditors." No specific "conveyances" or "transfers" were named in the complaint and no dates of any such

---

[4] According to Tindall's affidavit dated August 8, 2011, however, Tindall attested that Ray and DOABA owed him, to that date, $138,763.87.

[5] The lower court record is extensive. We have only summarized, in brief, some of the relevant lower court filings and proceedings.

[6] As discussed in footnote 1, Midwest Oil was stricken as a party because plaintiffs' counsel was never retained to represent it in this matter.

fraudulent transfers were set forth. Rather, plaintiffs alleged that Ray "customarily siphons cash and other property from the business and its corporate accounts . . . with the actual intent to conceal such assets and default creditors." Plaintiffs also listed eleven purported creditors of Ray and DOABA, including plaintiffs Midwest Oil ($125,000), Chaban PC ($32,097.25), and Tindall PC ($27,425).

In count II of their complaint, plaintiffs sought the appointment of a receiver and requested the trial court to issue an order to show cause, without notice, and conduct a hearing for issuance of a preliminary injunction to enjoin all further transfers of assets by Ray, DOABA, and defendants. Plaintiffs alleged that Ray and DOABA "have established a pattern and history of evading and violating court orders, committing contempt of court, and refusing to comply with lawful court orders." Plaintiffs also sought an order authorizing immediate discovery to commence, including depositions and the production of bank records of defendants, Ray, and DOABA.

In count III of their complaint, plaintiffs sought attorney fees and costs alleging: "Firm's claim includes [Ray's] contractual obligation to pay all costs, expenses and fees incurred in the collection of amounts due, including attorney fees and costs." Plaintiffs also alleged that "[Ray] is contractually liable for all expenses, costs, and fees incurred in bringing and prosecuting this action." Plaintiffs attached as exhibits to their complaint (1) a mortgage between Ray and Midwest Oil, (2) a security agreement between Midwest Oil and DOABA, (3) an affidavit of Chaban regarding his alleged outstanding attorney fees, (4) a retainer fee agreement between Ray and Tindall PC, as well as billing records, and (5) a show cause order entered on February 25, 2010, against DOABA in another legal action.

On the same date, plaintiffs filed a motion for ex parte order to show cause and alleged, consistent with their complaint, that defendants "have engaged in transfers of assets between them to secret assets, property and money from creditors, to avoid payment of Judgment[7] and claims, and, to defraud both present and future creditors of [Ray], [Kitty], DOABA and Defendants; all within the meaning and in violation of the MICHIGAN FRAUDULENT CONVEYANCE ACT [sic], being MCL 566.31, et. seq."

On the same date, December 14, 2010, the trial court issued an ex parte order to show cause, ordering defendants to appear and show cause why a preliminary injunction should not issue enjoining all transfers of assets. The order also provided that plaintiffs could immediately commence discovery, including depositions and the production of bank records.

On January 4, 2011, plaintiffs filed a supplemental brief in support of their requests for a preliminary injunction and the appointment of a receiver. Plaintiffs alleged that this was "a statutory fraudulent conveyance action to recover money, assets and property from various family/insider 'transferees,' fraudulently transferred/conveyed by an individual related debtor,

---

[7] However, as discussed above, neither Tindall PC nor Chaban PC had a judgment against DOABA or Ray.

-4-

and, his controlled businesses [ ]." Plaintiffs did not name any specific allegedly fraudulent transfer, but generally argued that such fraudulent transfers had occurred.

On January 4, 2011, defendants Kitty, Gurnoor, Malkiat, and Jasvir answered plaintiffs' complaint and asserted affirmative defenses, including that "the information which is the basis of this lawsuit was received by Plaintiff's [sic] counsel in a confidential setting or otherwise and use of said information to prosecute this lawsuit violates Michigan Rules of Professional Conduct 1.6(b)." Defendants also alleged that plaintiffs "have not listed any specific transfer that they allege to be fraudulent under the statute" and that plaintiffs' counsel were "barred from suing the 'debtors' because it would constitute a violation of the Michigan Code of Professional Responsibility." On that same date, these defendants filed an answer to plaintiffs' motion for ex parte order to show cause. They denied plaintiffs' allegations and relied on their affirmative defenses to support their request for dismissal of plaintiffs' motion for lack of merit.

On January 10, 2011, the trial court issued an order dismissing defendant Mohan Rathore for the reason that he was deceased. On January 12, 2011, the trial court issued an order granting plaintiffs leave to amend their complaint and add any necessary parties, both corporate and individual.

On January 14, 2011, plaintiffs filed their first amended complaint which added as named defendants Ray (as a "debtor") and DOABA (as a "debtor" and an "insider").[8] The allegations set forth in counts I, II, and III remained substantially the same. Plaintiffs also added as count IV a claim of "fraud; alter ego," alleging that Ray and Kitty operated DOABA as their alter egos and regularly misappropriated, comingled, and transferred corporate funds and assets for the purpose of defrauding creditors. Plaintiffs also added as count V a claim of "corporate dissolution and liquidation," and sought dissolution and liquidation of DOABA. The same exhibits that were attached to the initial complaint were attached to the first amended complaint.

On January 19, 2011, a preliminary injunction/receivership show cause hearing began in the trial court. After Ray was called by Tindall as a witness, defendants' counsel raised objections based on the attorney-client privilege and MRPC 1.6(b). Defendants' counsel argued that plaintiffs were using information gained during Tindall and Chaban's attorney-client relationships to prosecute this matter. With regard to defendants' objection based on the attorney-client privilege, Tindall responded that the information he was presenting was either "public record documents filed or submitted to me to be filed." The trial court sustained the objection "to anything which is attorney/client privilege." With regard to defendants' objection based on MRPC 1.6, Tindall responded that MRPC 1.0(b) provides that "failure to comply with a professional standard is not a basis for a civil matter in a civil court. It is a basis for professional discipline only. It cannot be used either as a claim or as a defense." Tindall also argued that MRPC 1.6(c)(3) permitted him to disclose confidences and secrets "to the extent reasonably

---

[8] Contrary to plaintiffs' claim on appeal, Ray and DOABA were necessary parties under the circumstances of this case because they were never determined to be liable, i.e., "debtors," on plaintiffs' purported claims. See *Mather Investors, LLC v Larson*, 271 Mich App 254, 259-260; 720 NW2d 575 (2006).

necessary to rectify the consequences of a client's illegal or fraudulent act in furtherance of which the lawyer's services have been used." Tindall further argued that MRPC 1.6(c)(5) permitted him to disclose "confidences and secrets necessary to establish or collect a fee." He also asserted: "My law firm is a plaintiff in this action." The trial court apparently overruled defendants' objection based on MRPC 1.6(b), allowing Tindall to "[c]ontinue on in whatever manner you feel appropriate on this matter." Thereafter, Tindall was permitted to conduct a cross-examination of Ray. At the conclusion of the hearing, the trial court requested closing arguments be filed by written briefs.

On February 3, 2011, defendants Ray, DOABA, Kitty, Gurnoor, Malkiat, and Jasvir filed their answer and affirmative defenses to plaintiffs' first amended complaint. Their affirmative defenses included that "the information which is the basis of this lawsuit was received by Plaintiff's [sic] counsel in a confidential setting or otherwise and use of said information to prosecute this lawsuit violates Michigan Rule of Professional Conduct 1.6(b)." They denied that the exceptions to Rule 1.6(b) applied; therefore, they argued, "such evidence is not admissible at trial and the Plaintiff's [sic] claim is not actionable under Michigan law." Further, defendants alleged that "the evidence to be used by the Plaintiffs [sic] violates the attorney-client privilege, MRE 501 and interpreting cases, and therefore is not admissible." And defendants noted that plaintiffs failed "to list any specific transfer that they allege to be fraudulent under the fraudulent transfer statute."

On February 8, 2011, plaintiffs filed a "cross motion and brief for summary disposition" pursuant to MCR 2.116(C)(10) and argued that they were entitled to judgment on counts I, IV, and V of their first amended complaint.[9] Plaintiffs argued that the record demonstrated numerous fraudulent transfers of assets by and between the various defendants.

On February 15, 2011, plaintiffs filed a motion for protective order averring that defendants had served several discovery requests, including two sets of interrogatories, a request for production of documents, and a notice of taking deposition, which failed to comply with applicable court rules, were improper and abusive. In particular, plaintiffs argued that none of the "discovery attempts" were relevant or reasonably calculated to lead to the discovery of admissible evidence.

On February 24, 2011, the trial court issued an opinion and order granting plaintiffs' motion for preliminary injunction and appointed a receiver, Paul F. McNamara, who was appointed "for the purposes of controlling and managing the real estate, cash assets, bank accounts, investments, revenues and financial functions of Debtors and Defendants . . . ."

On March 1, 2011, defendants filed a motion to compel plaintiffs to answer interrogatories, produce documents, and provide deposition testimony. In their discovery requests, defendants had sought specific information designed to discover the evidence plaintiffs were relying on to support their claims that plaintiffs were "creditors," DOABA was insolvent, and that certain fraudulent transfers of DOABA assets occurred in violation of the UFTA.

---

[9] The motion for summary disposition filed by defendants related to Gurnoor Rathore only.

-6-

On April 14, 2011, plaintiffs filed a motion for order of contempt and sale of property. Plaintiffs requested, in part, that the trial court direct the receiver to permanently close DOABA, take physical possession, and immediately conduct a public sale of the business and property. Plaintiffs also requested that the trial court grant further relief, including "the liquidation of the personal assets of the various individual Defendants, as necessary to recover back fraudulently transferred assets."

On May 2, 2011, the trial court entered an order quashing service of the amended complaint on defendants Pritam, Bakshinder, and Indejit for lack of jurisdiction and providing that the order "constitutes a final order and resolves all outstanding issues as to those three defendants only."

On May 13, 2011, plaintiffs issued numerous subpoenas, including to defendants' attorney, defendants, as well as non-parties.

On June 6, 2011, defendants filed a motion to dismiss plaintiff Midwest Oil, alleging that it had been under receivership since December 21, 2009, and the receiver never hired Tindall to represent its interests in this matter. Thus, "defendants are being sued by Plaintiff MIDWEST when the attorney has no authority to represent this party. The representation is illegal and the Defendants are obviously affected by it." Tindall replied that: "Plaintiff counsel brought this action, derivatively, on behalf of all creditors of Defendants under the UFTA; and, has, repeatedly, recited he does not represent individual creditors, particularly Midwest Oil, on the merits of their underlying claims." On July 26, 2011, the trial court granted the motion and struck Midwest Oil as a party plaintiff.

On June 16, 2011, plaintiffs filed a motion for ex parte order to appear and show cause why entry of judgment and order of contempt and sale should not be entered by default. On that same date, the trial court issued an order requiring defense counsel and the receiver to appear and show cause why the motion should not be granted.

On July 20, 2011, plaintiffs filed a motion seeking removal of the appointed receiver on the ground that he was not qualified to act in this matter. By order entered July 26, 2011, the trial court denied plaintiffs' motion to remove the appointed receiver. Thereafter, plaintiffs filed a motion for reconsideration, which was denied.

On August 10, 2011, pursuant to MRPC 1.9, defendants filed a motion to disqualify Tindall and potential successor Chaban as counsel to plaintiffs in this lawsuit. They argued that both Tindall and Chaban had previously represented DOABA and Ray in other legal proceedings. And, as a consequence of their attorney-client relationships with DOABA and Ray, Tindall and Chaban gained information about DOABA and Ray that they were improperly revealing and using against them to prosecute this case which was expressly prohibited by MRPC 1.9.

On August 10, 2011, pursuant to MCR 2.118(C)(8), defendants also filed a motion for partial summary disposition, arguing that plaintiffs' counsel could not represent alleged non-party creditors on a "derivative lawsuit theory." Defendants argued that Tindall had no legal authority to represent non-party creditors of DOABA in a "derivative action" based on the UFTA

-7-

as he had attempted to do by bringing this action. Defendants also filed a motion to terminate the receivership on the ground that there were no funds to pay the cost of the receiver, as well as the attorney and certified public accountant acting on behalf of the receiver.

On September 14, 2011, plaintiffs filed a motion requesting permission to file a third-party complaint against the court-appointed receiver, alleging violations of the court's receivership order and breach of fiduciary duties.

On October 26, 2011, the trial court issued an opinion and order regarding the several motions filed by the parties. With regard to plaintiffs' motion for summary disposition, the trial court held that the preliminary injunction hearing did not result in the court finding as a matter of law the existence of fraudulent transfers; thus, plaintiffs' motion for summary disposition was denied. The trial court also denied plaintiffs' request for a protective order regarding defendants' discovery requests and granted defendants' motion to compel answers to discovery requests, specifically defendants' first and second set of interrogatories and request for production of documents. The trial court denied plaintiffs' motion for reconsideration of its previous order denying plaintiffs' request to remove the receiver in this matter, and denied defendants' motion to terminate the receivership. The trial court granted defendants' partial motion for summary disposition premised on the ground that plaintiffs could not allege claims of purported non-party creditors on a derivative lawsuit theory. Further, the trial court granted defendants' motion to disqualify attorneys Tindall and Chaban, holding that "the record demonstrates the current representation is substantially related to matters in which [they] formerly represented defendant DOABA." Finally, the trial court denied plaintiffs' motion to file a third-party complaint against the receiver.

On November 7, 2011, plaintiffs, through attorney Chaban, notified the trial court that an involuntary petition for relief was filed against Ray and Kitty under Chapter 7 of the bankruptcy code. Thereafter, on November 14, 2011, the trial court entered an order for administrative closing due to a bankruptcy stay. However, on November 30, 2011, the bankruptcy court dismissed the petition.

On December 2, 2011, defendants filed a motion to dismiss with prejudice, to dissolve the receivership, and for costs, attorney fees, and sanctions. Defendants requested dismissal on the grounds that (1) plaintiffs failed to comply with the court's order requiring them to provide discovery as set forth in the order, and (2) the corporate plaintiffs failed to be represented by an attorney following the court's disqualification of Tindall and Chaban. Defendants also requested sanctions and attorney fees arguing: "[I]t is quite obvious through this lengthy litigation that the intention of Plaintiffs and their attorneys, MARK CHABAN and MICHAEL TINDALL, was to harass and injure the Defendants through the legal system and ultimately to extort a settlement from them or else cause them to incur very substantial attorney fees in order to defend this case. This is further evidenced by the fact that, except for two (2) motions involving receivership, the Plaintiffs lost approximately eleven (11) motions which they argued before the Court and moreover its attorneys have been disqualified." Defendants further argued that "as a direct result of this unethical and illegal conduct by the Plaintiffs and their counsel, the Defendants have incurred very substantial legal fees."

On December 12, 2011, the trial court granted defendants' motion to dismiss with prejudice, to dissolve the receivership, and for costs, attorney fees, and sanctions, but ordered a hearing to be held regarding the relief requested, including attorney fees.

On January 10, 2012, the trial court entered an order dismissing plaintiffs' case with prejudice "due to Plaintiffs failure to comply with the discovery and substitution portion of the October 26, 2011 order pages 14 and 16." The trial court further ordered that the receivership over all defendants was dissolved.

On January 23, 2012, the trial court issued an opinion and order granting defendants' motion for sanctions, in part, and granting plaintiffs' request for an evidentiary hearing regarding the amount of sanctions. The trial court held, first, that attorneys Chaban and Tindall continued to file pleadings on behalf of plaintiffs in violation of the court's order holding that they were disqualified. Second, the court held, pursuant to MCR 2.313(B) and because of plaintiffs "blatant disregard for the Court's orders, sanctions of reasonable expenses, including reasonable attorney fees and costs, are warranted." Third, pursuant to MCL 600.2591(3)(a)(i) and MCR 2.114(D)(3), the trial court deemed the action frivolous, holding: "In this matter, due to the proceedings in this case, the various redundant pleadings filed by plaintiffs, plaintiffs failure to follow Court orders, plaintiffs failure to participate in discovery, and plaintiffs failure to continue to litigate this matter, the record demonstrates plaintiffs' primary purpose was to harass, delay, and increase the cost of litigation." The court also held that the sanctions to be awarded may include reasonable costs of the receiver, the receiver's attorney, and the receiver's CPA, which was to be determined at an evidentiary hearing. The court ordered an evidentiary hearing to be conducted with regard to the amount of sanctions and attorney fees to be awarded to defendants.

Thereafter, numerous additional motions were filed by plaintiffs, who referred to themselves as "sanction respondents." The evidentiary hearing that was ordered by the trial court was also repeatedly adjourned by the trial court.

On July 3, 2012, plaintiffs/sanction respondents, through Chaban, gave notice to the trial court of another bankruptcy filing and removal of the civil proceedings, advising that a petition for relief was filed under chapter 11 of the bankruptcy code. On July 30, 2012, the bankruptcy court entered an order of abstention and remand, which ordered this matter remanded to the circuit court.

On August 20, 2012, plaintiffs/sanction respondents, through attorney Tindall, filed a motion in opposition to defendants' request to reschedule a hearing and moved to disqualify the trial judge from further proceedings regarding this matter. Tindall alleged that he reviewed materials prepared by the receiver in this matter and they illustrated at least six instances of ex parte communications between the appointed receiver and the trial court; consequently, the trial judge should be disqualified, on due process grounds, from conducting any further proceedings. Chaban filed a concurrence with regard to this motion.

On August 27, 2012, oral arguments were held on Tindall's motion to disqualify the trial judge. Tindall claimed that on June 25, 2011, according to McNamara's records, McNamara prepared a memorandum to the trial judge. The court asked Tindall: "That is not contact with me, June 25th, is it?" And Tindall replied, "No." Next, Tindall referred to McNamara's entry on

June 29th, "preparation of a file memorandum and research." The court asked Tindall, "Is that a communication with me, ex parte or otherwise?" Tindall replied, "No." Tindall also claimed that an entry stating "continuing preparation for June 30, 2011 hearing, draft of a memorandum to Judge Foster" constituted ex parte communication; however, Tindall did not present any evidence regarding either the memorandum or any contact between the court and McNamara. Thereafter, the trial court held that Tindall did not show that the court had acted improperly and referred the matter to the chief judge for decision. Defendants' counsel indicated that the chief judge was available to hear the matter on that same day, and the trial court turned its file over to the parties for the chief judge's consideration. It appears from the lower court record that the chief judge was available to entertain the motion, and entered an order denying Tindall's motion to disqualify the trial judge. It also appears that the chief judge concluded that Tindall failed to establish either any ex parte communications or that ex parte communications between a trial court and its receiver are prohibited. However, this Court has not been provided with a transcript, if any, of the proceedings that occurred before the chief judge in violation of MCR 7.210(A). Accordingly, on August 27, 2012, the trial court and the chief judge of that court entered orders denying plaintiffs/sanction respondents' motion to disqualify the trial judge.

Although it appears from the lower court record that an evidentiary hearing was conducted with regard to sanctions and attorney fees to be awarded to defendants, we have not been provided with either the transcripts related to the hearing or any court orders issued following the hearing.

While the lower court proceedings continued, on January 31, 2012, plaintiffs filed their claim of appeal. Plaintiffs challenge several of the trial court's orders, including: (1) the October 26, 2011 order denying plaintiffs' motion for summary disposition, disqualifying plaintiffs' counsel, compelling plaintiffs to provide discovery, and denying plaintiffs' request for leave to sue the receiver; (2) the January 10, 2012 order dismissing this action with prejudice and dissolving the receivership; and (3) the January 23, 2012 order granting defendants sanctions and attorney fees. On June 6, 2012, plaintiffs filed a motion for stay pending appeal, which was denied by order of this Court on June 14, 2012. On August 29, 2012, plaintiffs filed another motion to stay pending appeal and to amend their claim, which was denied by this Court on August 30, 2012. On October 11, 2012, defendants filed a motion to affirm pursuant to MCR 7.211(C)(3) and on October 22, 2012 plaintiffs filed a motion for peremptory reversal pursuant to MCR 7.211(C)(4), both of which were denied by this Court on November 14, 2012.

We first consider plaintiffs' argument that Tindall and Chaban were erroneously determined to have a conflict of interest under MRPC 1.9 (former client) because the exceptions set forth in MRPC 1.6 applied in this case.

We review for clear error the trial court's determination that a conflict of interest exists. *Rymal v Baergen*, 262 Mich App 274, 316; 686 NW2d 241 (2004). A trial court's findings of fact are clearly erroneous only if we are left with a definite and firm conviction that a mistake has been made. *Samuel D Begola Servs, Inc v Wild Bros*, 210 Mich App 636, 639; 534 NW2d 217 (1995). The rules of statutory construction apply to the interpretation of rules under the MRPC. *Morris & Doherty, PC v Lockwood*, 259 Mich App 38, 44; 672 NW2d 884 (2003). Accordingly, "[i]f the plain and ordinary meaning of the language is clear, judicial construction is normally neither necessary nor permitted." *Id*. at 43.

-10-

MRPC 1.9 provides:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.
>
> * * *
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> (1) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has become generally known; or
>
> (2) reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

In this case, it is undisputed that both Tindall and Chaban, and their law firms, formerly represented DOABA and Ray in legal matters. Tindall and Chaban's law firms brought this UFTA action against DOABA and Ray, as well as Ray's relatives, after a dispute regarding outstanding legal fees arose between Tindall, Chaban, and Ray. Tindall and Chaban pursued this action against DOABA and Ray on behalf of their law firms—alleged creditors of DOABA and Ray as a consequence of those alleged outstanding legal fees. The plain language of MRPC 1.9(a) specifically prohibited—as denoted by the words "shall not"—both Tindall and Chaban from representing their law firms[10] in this substantially related matter in which their law firms' interests were materially adverse to the interests of their former clients, DOABA and Ray.[11]

Even more egregious, Tindall and Chaban *used* "information relating to the representation to the disadvantage of the former" clients, Ray and DOABA. See MRPC 1.9(c)(1). And Tindall and Chaban *revealed* information relating to their representations. See MRPC 1.9(c)(2). That is, Tindall and Chaban revealed and used financial and other confidential information acquired during their legal representations of DOABA and Ray in this fraud action filed against DOABA and Ray by their law firms. In fact, in their complaint, plaintiffs listed in detail alleged creditors of DOABA, as well as the amount of the purported debts.

---

[10] The law considers a corporation a "person." *Jones v Martz & Meek Constr Co, Inc*, 362 Mich 451, 455; 107 NW2d 802 (1961).

[11] "The phrases 'shall' and 'shall not' are unambiguous and denote a mandatory, rather than discretionary action." *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 65; 642 NW2d 663 (2002).

But Tindall and Chaban argue here, as they did in the trial court, that the exceptions set forth in MRPC 1.6(c)(3) and (5) apply. They do not apply. MRPC 1.6 provides:

> (a) "Confidence" refers to information protected by the client-lawyer privilege under applicable law, and "secret" refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.
>
> * * *
>
> (c) A lawyer may reveal:
>
> * * *
>
> (3) confidences and secrets to the extent reasonably necessary to rectify the consequences of a client's illegal or fraudulent act in the furtherance of which the lawyer's services have been used;
>
> * * *
>
> (5) confidences or secrets necessary to establish or collect a fee, or to defend the lawyer or the lawyer's employees or associates against an accusation of wrongful conduct.

First, Tindall and Chaban did not reveal the confidences of Ray and DOABA to rectify the consequences of Ray or DOABA's illegal or fraudulent acts "*in the furtherance of which [Tindall's and Chaban's] services have been used.*" That is, in this UFTA case filed on behalf their law firms, Tindall and Chaban never claimed that their legal services were used by Ray and DOABA to fraudulently transfer any assets owned by DOABA in violation of MCL 566.34(1)(a). In fact, Tindall and Chaban never claimed that Ray or DOABA used their legal services to commit any illegal or fraudulent act that required rectification through the disclosure of Ray and DOABA's confidences. Accordingly, the exception set forth in MRPC 1.6(c)(3) did not apply to Tindall's and Chaban's disclosures.

Second, Tindall and Chaban did not reveal confidences of Ray and DOABA "to establish or collect a fee." MPRC 1.6(c)(5). As set forth in the comment section of MRPC 1.6(c)(5):

> A lawyer entitled to a fee is permitted by paragraph (c)(5) to prove the services rendered in an action to collect it. This aspect of the rule expresses the principle that the beneficiary of a fiduciary relationship may not exploit it to the detriment of the fiduciary. As stated above, the lawyer must make every effort practicable to avoid unnecessary disclosure of information relating to a representation, to limit disclosure to those having the need to know it, and to obtain protective orders or make other arrangements minimizing the risk of disclosure.

This was not an action to establish or collect attorney fees; rather, this was a UFTA action. And Tindall and Chaban did not reveal the confidences of Ray and DOABA to prove "the services

rendered" for purposes of collecting their law firm's claimed legal fees. As Tindall repeatedly advised the trial court, plaintiffs brought this UFTA action "derivatively," on behalf of all of the "creditors" of Ray and DOABA, although Tindall was not retained to represent any of these alleged "creditors" which he learned about during the course of his representation of Ray and DOABA. And Tindall and Chaban clearly did not reveal only the confidences "*necessary* to establish or collect a fee." MRPC 1.6(c)(5). Accordingly, the exception set forth in MRPC 1.6(c)(5) did not apply.

In summary, we wholly reject plaintiffs' argument that Tindall and Chaban were erroneously determined to have a conflict of interest under MRPC 1.9. The exceptions set forth in MRPC 1.6(c)(3) and (5) did not apply in this UFTA case. Thus, the trial court's decision is affirmed. See *Rymal*, 262 Mich App at 316.

Next, plaintiffs argue that the trial court erroneously denied their motion for summary disposition following the preliminary injunction/receivership hearing. We disagree.

As discussed above, this UFTA action was filed by plaintiffs after their attorneys, Tindall and Chaban, claimed that they were owed additional fees for their legal services rendered to Ray and DOABA, which Ray denied. Plaintiffs did not, however, file a lawsuit against DOABA or Ray to establish their rights to their alleged unpaid legal fees. Instead, plaintiffs filed this UFTA action premised on confidential information that Tindall and Chaban acquired about DOABA and Ray during the course of their attorney-client relationships with DOABA and Ray, although plaintiffs neither alleged nor attempted to establish that the legal services of Tindall and Chaban were used to perpetrate any alleged fraudulent transfers. Under these circumstances, plaintiffs were prohibited by MRPC 1.9 from instituting this UFTA action. This matter should have been dismissed even before the preliminary injunction/receivership hearing—which should have never taken place. That is, defendants should not have been subjected to these lengthy and acrimonious legal proceedings at all.

On the same date the complaint was filed, the trial court should have reviewed the initial complaint because, on that same date, the trial court issued an ex parte order allowing plaintiffs and its attorneys, Tindall and Chaban, the right to immediately commence discovery, including depositions and the production of defendants' bank records and other documents—a significant invasion of privacy. Although plaintiffs failed to specifically disclose in their complaint that Tindall and Chaban had established attorney-client relationships with DOABA and Ray, stating only that plaintiffs were their "creditors" as defined under the UFTA, the trial court should have noticed that the complaint was seriously deficient even after a cursory review and denied plaintiffs' motion for an ex parte order to show cause. First, plaintiffs failed to set forth a single, specific "transfer" that was being challenged as fraudulent. MCL 566.34 provides:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following:
>
> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor.

-13-

And, as discussed above, plaintiffs did not allege that the legal services of Tindall and Chaban were used in furtherance of any purported fraudulent transfer. Second, and more importantly, the claims set forth in count III, which referenced purported contractual obligations, as well as the affidavit of Chaban and Tindall's billing records which were attached to the complaint, should have signaled to the trial court, at least, that further inquiry was required in this matter. Upon review of the complaint, it should have become obvious that, in support of their UFTA claims, albeit deficient, plaintiffs were relying on confidential information that Chaban and Tindall obtained during the course of their attorney-client relationships in violation of the MRPC and the attorney-client privilege. Thus, the trial court should have denied plaintiffs' motion for ex parte order to show cause.

Further, the trial court should have dismissed this matter before or during the preliminary injunction/receivership hearing. Consistent with their affirmative defenses filed in this matter, defendants challenged the propriety of this legal action at the beginning of the hearing. Defendants argued that plaintiffs were using confidential information that Chaban and Tindall acquired during the course of their attorney-client relationships with DOABA and Ray to prosecute this lawsuit in violation of the attorney-client privilege, as well as the MRPC. Instead of properly considering defendants' objections, the trial court allowed Tindall to "[c]ontinue on in whatever manner you feel appropriate on this matter." During the hearing, Tindall admitted that he was presenting as evidence in *this* matter documents that Ray had provided to him with regard to the filing of a bankruptcy petition on behalf of DOABA. Nevertheless, following the hearing, the trial court issued an order granting plaintiffs' motion for preliminary injunction and request for a receiver to be appointed with regard to DOABA. However, before granting plaintiffs' request for a preliminary injunction, the trial court should have considered defendants' claim that plaintiffs were prohibited from instituting this action. Consequently, plaintiffs could not establish the first element in favor of the issuance of a preliminary injunction which is the likelihood that the parties seeking the injunction will prevail on the merits. See *Michigan AFSCME Council 25 v Woodhaven-Brownstown Sch Dist*, 293 Mich App 143, 148; 809 NW2d 444 (2011) (citation omitted). Plaintiffs could not prevail on the merits because they were prohibited by the MRPC from instituting this UFTA action. And, thus, a receiver should not have been appointed with regard to DOABA. For these reasons, we wholly reject plaintiffs' claim on appeal that they were entitled to summary disposition following the preliminary injunction/receivership hearing. This matter should have been dismissed in favor of defendants before, during, or after the preliminary injunction/receivership hearing.

We further reject plaintiffs' claims on appeal that the trial court erred in: refusing to remove and surcharge the appointed receiver, denying leave to sue the receiver for misconduct, failing to disqualify itself because of ex parte communications with the receiver, and in ordering plaintiffs to provide discovery. First, as discussed above, a receiver should not have been appointed in this matter. Plaintiffs were prohibited by MRPC 1.9 from instituting this UFTA action; thus, the appointment of a receiver—a harsh remedy—was not necessary to preserve defendants' property. See *Reed v Reed*, 265 Mich App 131, 161-162; 693 NW2d 825 (2005). Accordingly, the trial court abused its discretion when it used its equitable powers to appoint a receiver in this matter. See MCL 600.2926; *Reed*, 265 Mich App at 161. Therefore, plaintiffs' claims that the receiver should have been removed for misconduct and that plaintiffs should have been allowed to sue the receiver do not warrant further discussion. Further, plaintiffs' claim that

the trial court engaged in impermissible ex parte communications with the receiver requiring disqualification is also moot.

Finally, we address plaintiffs' claim that the trial court erred in ordering plaintiffs to provide discovery to defendants. Throughout the lower court proceedings, plaintiffs consistently refused to provide any discovery to defendants in this matter, arguing that the discovery requests were "improper and abusive." Plaintiffs even sought a protective order to allow them to keep defendants, as well as the trial court, ignorant of the facts and evidentiary support for plaintiffs' claims. MCR 2.302(B) provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ." We have reviewed defendants' discovery requests and they were proper requests designed to elicit information regarding plaintiffs' claims that plaintiffs were "creditors," that DOABA was insolvent (which plaintiffs claimed showed defendants' actual intent to defraud under MCL 566.34(2)(i) of the UFTA), and that fraudulent transfers of DOABA's assets occurred in violation of the UFTA. It appears that plaintiffs' refusal to provide any discovery in this matter is consistent with, and illustrates their intent to mislead the trial court with regard to their right to institute this UFTA action against defendants, as well as with regard to the legal substance and merits of their claims. That is, plaintiffs' complaint (1) failed to disclose the attorney-client relationships between Tindall, Chaban, Ray, and DOABA; (2) failed to clearly and precisely disclose how plaintiffs became "creditors" of DOABA and Ray; and (3) failed to set forth even a single allegedly fraudulent transfer that was perpetrated through the legal services of Tindall and Chaban. Further, plaintiffs named Midwest Oil as a plaintiff, although Midwest Oil never retained plaintiffs to pursue this matter on its behalf. And in their complaint plaintiffs listed by name, along with the alleged amounts owed, several alleged creditors of DOABA that Tindall claimed he represented throughout these proceedings. Plaintiffs' refusal to provide discovery in this matter furthered an apparent objective to harass, intimidate, and embarrass defendants, as well as to prolong these proceedings so that defendants would incur substantial legal fees defending against these unwarranted, frivolous, and clearly improper claims. Accordingly, although we conclude that this matter should have been promptly dismissed, we also reject plaintiffs' claim that the trial court erred in ordering them to provide discovery in this matter.

Plaintiffs also argue on appeal that defendants were not entitled to sanctions under MCL 600.2591(3)(a)(i), MCR 2.313(B), and MCR 2.114(D)(3); thus, the trial court clearly erred when it awarded defendants sanctions. We disagree. A trial court's finding that an action was frivolous in violation of MCL 600.2591 is reviewed for clear error. See *Szymanski v Brown*, 221 Mich App 423, 436; 562 NW2d 212 (1997). We likewise review for clear error a trial court's decision whether to impose sanctions under MCR 2.114. *Guerrero v Smith*, 280 Mich App 647, 677; 761 NW2d 723 (2008). And we review for an abuse of discretion a trial court's imposition of discovery sanctions pursuant to MCR 2.313, including dismissal. *Traxler v Ford Motor Co*, 227 Mich App 276, 286; 576 NW2d 398 (1998).

MCL 600.2591(1) provides authority for the trial court to award sanctions against a party which files a frivolous civil action. An action is "frivolous" if:

> (i) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

14-05100-wsd    Doc 1-4    Filed 10/20/14    Entered 10/20/14 18:32:29    Page 15 of 17

(ii) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(iii) The party's legal position was devoid of arguable legal merit. [MCL 600.2591(3).]

Similarly, MCR 2.114 provides:

**(D) Effect of Signature.** The signature of an attorney or party . . . constitutes a certification by the signer that

(1) he or she has read the document;

(2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and

(3) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

**(E) Sanctions for Violation.** If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees.

And MCR 2.313(B)(2)(c) authorizes the trial court to award sanctions, including dismissal of an action, against a party which fails to obey an order to provide or permit discovery.

In this case, for the reasons discussed above, the trial court's decision to award frivolous action sanctions pursuant to MCL 600.2591 was not clearly erroneous. As the trial court held, it is clear from the record evidence that plaintiffs' primary purpose in initiating this UFTA action was to harass, embarrass, and injure defendants. MCL 600.2591(3)(i). Similarly, the trial court's decision to impose sanctions against plaintiffs' counsel under MCR 2.114(D)(3) was not clearly erroneous because the numerous documents he signed throughout the course of these proceedings, including the complaint, first amended complaint, several motions, and several subpoenas, were for the purposes of harassment, to cause unnecessary delay, and to cause defendants to incur substantial legal fees defending against these improper claims. And the trial court did not abuse its discretion when it dismissed this action pursuant to MCR 2.313(B)(2)(c) after plaintiffs failed to comply with the trial court's discovery order.

In summary, plaintiffs violated MRPC 1.6 and 1.9 by bringing this UFTA action and by revealing and using confidential information acquired by Tindall and Chaban during the course of their attorney-client relationships with Ray and DOABA. This matter should have been dismissed shortly after it was filed. Plaintiffs also misrepresented to the trial court that they were the legal representatives of Midwest Oil, as well as several other "creditors" of DOABA.

Because of plaintiffs' evasive pleading tactics, including the failure to clearly disclose Tindall's and Chaban's attorney-client relationships with Ray and DOABA, plaintiffs were improperly granted a preliminary injunction, a receivership was improperly imposed upon DOABA, and all defendants were subjected to the improper and harassing discovery requests of plaintiffs which resulted in a significant invasion of defendants' rights to privacy, as well as other rights. The trial court improperly ignored defendants' several objections challenging the propriety of this legal action which was instituted in violation of the MRPC, and was supported by evidence that violated the MRPC and the attorney-client privileges held by DOABA and Ray.

Further, we have reviewed this entire matter and note that the conduct of Tindall and Chaban throughout these proceedings was consistently unprofessional and retaliatory in nature. This matter arose as a consequence of an attorney fee dispute. We note that Tindall's alleged outstanding balance for his short representation was initially $8,675 (after Ray had paid him $30,000) and rose to over $138,763 during these proceedings. We also note that Chaban filed two involuntary bankruptcy proceedings against DOABA during the course of this frivolous and improper UFTA action. The type of egregious and outrageous attorney conduct displayed during the entirety of this matter demands answer in an extraordinary measure of action. Considering the flagrant and inexcusable MRPC violations, the numerous misrepresentations, abuse, harassment, and the tactics designed to embarrass and humiliate, as well as exhaust financial resources, we direct the trial court to refer attorneys Tindall and Chaban to the Attorney Grievance Commission for investigation regarding their conduct during the entirety of the trial court proceedings. See MCR 7.216(A)(7); MCR 9.104; MRPC 8.3(a).

Affirmed. Defendants are entitled to costs as the prevailing parties pursuant to MCR 7.219(A). Further, on our own motion, we hold that defendants are entitled to assess actual damages and expenses associated with this vexatious appeal, MCR 7.216(C)(1)(a); thus, we remand this matter to the trial court for determination of defendants' award, MCR 7.216(C)(2). We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro